UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BOLIVAR DEXTA, )
)
Petitioner, )
)
v. ) No. 1:08-CV-171/1:02-CR-104
)
UNITED STATES OF AMERICA, ) Chief Judge Curtis L. Collier
)
Respondent. )
)

# MEMORANDUM

*Pro se* Petitioner Bolivar Dexta ("Petitioner") filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Court File No. 84). Pursuant to the Court's Order (Court File No. 85), the Government filed a response (Court File No. 86). This Court sentenced Petitioner to 151 months in prison on November 7, 2003, after a jury returned a verdict of guilty on the following counts: (1) conspiracy to distribute 50 grams or more of methamphetamine mixture; (2) possession with intent to distribute 50 grams or more of methamphetamine mixture; and (3) attempt to distribute 50 grams or more of methamphetamine mixture in violation of 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(B). Judgment was entered on December 4, 2003.

The Sixth Circuit Court of Appeals affirmed Petitioner's convictions, but remanded his case for resentencing pursuant to *United States v. Booker*, 543 U.S. 220 (2005), on August 9, 2005 (Court File No. 63) and the mandate was issued August 22, 2005 (Court File No. 64). Defendant was resentenced to 151 months of incarceration on each count to be served concurrently on December 13, 2005, and this sentence was affirmed on appeal. *United States v. Dexta*, 470 F.3d 612 (6th Cir. 2006). The Supreme Court denied Petitioner's request for a writ of certiorari on July 12, 2007

(Court File No. 80), and Petitioner timely filed his § 2255 motion on July 11, 2008 (Court File No. 84).

Petitioner claims (1) actual innocence; (2) a violation of his due process rights because his codefendant, Paul Bailes, was offered something of value to testify against him at trial; (3) the Court erred in applying the obstruction of justice enhancement during sentencing; (4) the Court erred in denying him a reduction in his Guideline range for "acceptance of responsibility"; (5) the Court improperly imposed a sentence based on a finding the controlled substance at issue was a Schedule II and not a Schedule III controlled substance; (6) ineffective assistance of counsel; and (7) the Court erred by failing to consider Petitioner's eligibility for "safety valve" under 18 U.S.C. § 3553(f).

The Court finds the materials thus submitted, together with the record of the underlying criminal case (1:02-CR-104), conclusively show Petitioner is not entitled to relief on any of the claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY** Petitioner's motion for the reasons stated herein.

I. **RELEVANT FACTS AND PROCEDURAL HISTORY**

The following facts are taken from the Sixth Circuit opinion affirming Petitioner's conviction:

> On March 17, 2003, the matter proceeded to jury trial. On the first day of trial, Paul Bailes testified as a government witness. Bailes stated that he pled guilty, pursuant to a plea agreement, to conspiracy to distribute methamphetamine. Bailes testified that he obtained methamphetamine from Dexta six or seven times, beginning in June 2002, and that an individual by the name of Carlos was present during one of his last methamphetamine transactions with Dexta. Bailes stated that he believed Carlos was Dexta's source of methamphetamine; when asked why he believed this was true, Bailes testified that Dexta said so himself. Bailes also testified that the one pound of

methamphetamine that was seized from him on the day of his arrest was obtained from Dexta.

The government also called Phillip Narramore, a detective in the Chattanooga Police Department. Narramore testified to the following facts: On July 17, 2002, Narramore was contacted by two informants who advised him that Bailes was selling large amounts of methamphetamine. On the following day, Narramore and other officers set up a drug buy between Bailes and one of the informants. Narramore instructed the informant to set up the transaction at a particular motel. After the informant contacted Bailes, Bailes arrived in a black Chevrolet truck, placed a pound of methamphetamine underneath his shirt, and went to the informant's room. The informant met Bailes at the door and told him they would have to go down the road to get the money from the person who wanted to buy the drugs. At this time, several officers attempted to stop Bailes. Bailes fled the scene, discarding the bag of methamphetamine. One of the officers immediately stopped and picked up the bag while another officer apprehended Bailes. After being placed under arrest, Bailes agreed to cooperate and informed Narramore that Dexta was his source of methamphetamine. During the questioning, Bailes's cell phone rang; Bailes said it was Dexta "calling about his money." At that point, Narramore and other officers proceeded to Bailes's residence to execute a search warrant. Dexta and Jimmy Johnson, Bailes's cousin, were found inside the residence. Dexta was placed under arrest, Mirandized and interviewed.

Narramore testified that at the time of his arrest, Dexta had a cell phone. Before turning the phone over to property, Narramore downloaded all the phone numbers found inside the phone. The call records indicated that in late June and in July of 2002, Dexta often made calls to Bailes shortly before or after he called an individual listed in his cell phone address book as Carlos. After Dexta's arrest, Narramore searched Dexta's residence where he found some paperwork that had the name Carlos Cotto.

On the second day of trial, the defense called Yamaris Santiago to the witness stand. Santiago testified that she had known Dexta for seven years and lived with the Dexta family from March to July 2002, during which time she never saw Bailes in or around the house. On cross-examination, Santiago testified that she knew Carlos Cotto, that Dexta knew Cotto, and that she had seen Cotto at Dexta's home on a few occasions during the time she lived there.

The defense also called Dexta's wife, Ana Dexta, to the witness stand. During direct examination, Ana Dexta testified that she and her husband drove to Bailes's home in June or July of 2002 because her husband was interested in purchasing a motorcycle from Bailes. After arriving at Bailes's home, Dexta test-drove the motorcycle and purchased it on the same day.

> On cross-examination, Ana Dexta testified that she knew Carlos Cotto and his wife Karen Santos Torres. Soon after, the following colloquy took place:
>
> By [the Government]: . . .
>
> Q. Ma'am, do you know that Carlos Cotto has been arrested with 2 pounds of methamphetamine?
>
> A. Carlos? Because I know Karen's mom. She works with me; Marion. And Karen's sister also works with me.
>
> Q. My question to you is, Mrs. Dexta, you know that Carlos Cotto has been arrested with 2 pounds of methamphetamine?
>
> A. Yes, I know, because the family told me that the son is in prison.
>
> Q. He was arrested after your husband, wasn't he?
>
> A. Yes.
>
> Q. About a month after?
>
> A. Yes.
>
> The defense also called Christopher Montalvo, a friend of Dexta. Montalvo testified that he knew Carlos Cotto, who had been to his house on one or two occasions, and had seen Karen Santos Torres. During cross-examination, the government asked Montalvo whether he knew that Carlos Cotto and Karen Santos Torres had been arrested, and Montalvo testified that he had heard about it. When asked if he knew the reason for the arrest, Montalvo replied that he heard it was for drugs. Montalvo then testified that he did not know what kind of drugs were involved. Defense counsel did not make any objections during cross-examination.

*United States v. Dexta*, 136 F. App'x 895, 899-902 (6th Cir. 2005).

In addition, the Government called Tammy Malone ("Malone") during their case-in-chief. Malone is the ex-wife of Codefendant Paul Bailes ("Bailes"). Malone testified she knew Petitioner as "Bolo" and described multiple occasions during which she witnessed drug transactions between Bailes and Petitioner. Officer Barry Vradenburgh with the Chattanooga Police Department testified

4

regarding the search of Petitioner's car on July 18, 2002, and his canine's alert to the glove box area. The Government called Yasmine Santiago as a rebuttal witness and she testified she had seen Petitioner with drugs, large amounts of cash, and overheard fights between Petitioner and his wife concerning her disapproval of his drug dealing. Following a four-day trial, the jury returned a guilty verdict on all counts.

Petitioner's Guideline range was calculated based on a base offense level of 32 (Presentence report ("PSR") at ¶¶ 10, 16). Petitioner was attributed with two pounds of methamphetamine- the one pound possessed by Bailes at the time of his arrest and the pound Petitioner had provided to Bailes during the course of the conspiracy. The Court applied a two-level enhancement pursuant to USSG § 3C1.1 due to Petitioner's perjury during the trial. Petitioner's total offense level was 34 and his criminal history category was I, which resulted in a guideline range of 151 to 188 months. Petitioner was sentenced to 151 months on each count to be served concurrently.

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside the sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled

principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

### III. DISCUSSION

Petitioner raises seven grounds for vacating his sentence under § 2255. He claims (1) actual innocence, (2) Bailes's testimony violated his due process rights, (3) the Court erred at sentencing by applying the obstruction of justice enhancement and denying reductions for acceptance of responsibility or Safety Valve, (4) the Court erred by finding methamphetamine was a Schedule II drug, and (5) he received ineffective assistance of counsel. All but two (claims (1) and (5)) of Petitioner's claims are procedurally defaulted because he failed to raise them on direct appeal. *See*

*Bousley v. United States*, 523 U.S. 614, 621 (1998). Therefore, these claims may only be raised in a § 2255 motion if the petitioner can first demonstrate either (1) "cause" to excuse his failure to raise the claim previously and actual "prejudice" resulting from the alleged violation, or (2) "actual innocence." *Id.* at 622; *Peveler v. United States*, 269 F.3d 693, 698-700 (6th Cir. 2001). Petitioner makes the argument he is actually innocent and also claims the failure to raise these claims on appeal was due to his ineffective assistance of counsel. Therefore, the Court will interpret these as arguments to excuse his default and will proceed to address the merits of each claim as they are pertinent to resolving Petitioner's ineffective assistance of counsel claim discussed below.

### A. Actual Innocence

Petitioner argues he is actually innocent because the jury relied on Bailes's testimony to find him guilty of the offenses. Petitioner claims Bailes "falsely implicated [him] for participation in a criminal offense" (Court File No. 84, p. 4). However, Petitioner's challenge of his codefendant's testimony is insufficient to demonstrate his actual innocence. To obtain any relief on the basis of an actual innocence claim, Petitioner must show "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Thus, Petitioner must show he did not commit the crimes as charged, not simply that an individual's testimony was untrustworthy.

A "claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The actual innocence exception is very narrow in scope and requires proof of factual innocence, not just legal insufficiency. *See Bousley,* 523 U.S. at 624. In order to establish actual innocence on collateral

review, Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Martin v. Perez*, 391 F.3d 799, 802 (6th Cir. 2004)(citations omitted). Petitioner has not made such a showing.

In the instant trial, the jury could have reasonably found Bailes's testimony credible. His description of the events and persons involved was consistent with testimony from Tammy Malone and Yamaris Santiago, and was also corroborated by telephone records showing numerous calls between Bailes, Petitioner, and Cotto during the time frame of the charged transactions. The Court finds, in light of all the evidence, the petitioner's claim of actual innocence does not warrant relief.

Since Petitioner's actual innocence claim is without merit, the remainder of Petitioner's claims, except the one for ineffective assistance of counsel, are barred by procedural default. Nevertheless, the Court will proceed to address the merits of Petitioner's claims because Petitioner relies on them as the grounds for his ineffective assistance of counsel claim.

### B. Testimony of Paul Bailes

Petitioner challenges the government's offering "something of value" to Codefendant Bailes for his testimony as violating Petitioner's right to due process. "But for the inducement offered by the Government to Paul Bailes, Bailes would not have falsely implicated the Movant in the offense" (Court File No. 84, p. 5). The Government denied offering to "significantly reduce Mr. Bailes['s] time of imprisonment if he would testify" (*id.*) and correctly noted their limited role of recommending a sentence based on Bailes's testimony (Court File No. 86, p. 10). Ultimately, the court alone, and not the prosecutor, selects an appropriate sentence.

To the extent the Government may have offered to recommend leniency at sentencing in exchange for Bailes's truthful cooperation at trial, this does not result in a violation of Petitioner's

8

rights. The Supreme Court has recognized and repeatedly upheld such plea bargaining practices, reasoning:

> The issue we deal with [the validity of a guilty plea entered after the defendant learned that his co-defendant had plead guilty and was available to testify against him] is inherent in the criminal law and its administration because guilty pleas are not constitutionally forbidden, because the criminal law characteristically extends to judge or jury a range of choice in setting the sentence in individual cases, and because both the State and the defendant often find it advantageous to preclude the possibility of the maximum penalty authorized by law. . . . [W]e cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State. . . . A contrary holding would require the States and Federal Government to forbid guilty pleas altogether[.]

*Brady v. United States*, 397 U.S. 742, 751-3 (1970). As the Sixth Circuit recognized in *United States v. Ware*, 161 F.3d 414, 419 (6th Cir. 1998), the "prosecutorial prerogative to recommend leniency in exchange for testimony dates back to the common law in England and has been recognized and approved by Congress, the courts, and the Sentencing Commission of the United States." A similar argument to that of the petitioner's was also rejected and deemed without merit in *United States v. Randolph*, 230 F.3d 243, 251 (6th Cir. 2000).

Accordingly, Petitioner's claim of a constitutional violation due to the Government's offer to recommend leniency in exchange for Bailes's truthful testimony is contrary to established law and fails to provide a basis for relief.

### C. Sentencing Errors

Petitioner next challenges the Court's application of the obstruction of justice enhancement, and denial of reductions in his offense level under the acceptance of responsibility or Safety Valve provisions. The Court will address each of the appropriateness of each of these Guideline provisions in turn.

### 1. Obstruction of Justice USSG § 3C1.1

Petitioner contends the obstruction of justice enhancement for perjury denies him due process and "he was wrongfully penalized for testifying in his own defense" (Court File No. 84, p. 7). A two-level enhancement for obstruction of justice applies if:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and
> (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

USSG § 3C1.1. The Supreme Court has upheld the constitutionality of the obstruction enhancement for perjury. *United States v. Dunnigan*, 507 U.S. 87 (1993). Once a court makes a "proper determination that the accused has committed perjury at trial," such an enhancement is "consistent with our precedents and is not in contravention of the privilege of an accused to testify in [his] own behalf." *Id.* at 98. Contrary to Petitioner's assertions, the Court did not base its application of the obstruction of justice enhancement on the jury's apparent rejection of his testimony. Rather, it made a specific finding in light of all the evidence to find Petitioner testified falsely with respect to the offenses for which he was charged (Court File No. 62, pp. 18-19). Therefore, the Court's proper application of the obstruction of justice enhancement was not a violation of Petitioner's constitutional rights.

### 2. Acceptance of Responsibility

As his second error in sentencing, Petitioner points to the Court's denial of a three-level reduction to his offense level pursuant to USSG § 3E1.1. Petitioner again argues he was penalized for standing trial and he should not have been deprived of the benefit for accepting responsibility. A court appropriately considers this adjustment where a defendant "truthfully admit[s]" the conduct

10

comprising the conduct comprising the offense but application of the §3E1.1 adjustment is inconsistent with "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true." USSG § 3E1.1, Application Note 1(A). Based on the Court's finding of perjury as supported by the record, Petitioner's argument that he is entitled to an adjustment for acceptance of responsibility is meritless. *See United States v. DeJohn*, 368 F.3d 533, 547 (6th Cir. 2004)(finding "the creative argument that [the defendant] is entitled to this adjustment despite his refusal to admit his guilt of specific convicted acts" without merit).

### 3. Safety Valve

Petitioner contends the Court's failure to consider application of the "Safety Valve" provision at 18 U.S.C. § 3553(f) violated his constitutional rights. This provision allows for imposition of a sentence below the statutory minimum sentence, "if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation" the defendant has satisfied five requirements. 18 U.S.C. § 3553(f); *see also* USSG § 5C1.2(a). The fifth requirement is that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense." § 3553(f)(5); §5C1.2(a)(5). A court is not precluded from determining a defendant complied with this requirement in the case where a defendant has no relevant or useful information. *Id.* The Guidelines allow for a two-level reduction to the offense level in cases where a defendant convicted of a drug offense meets the statutory safety valve criteria. USSG § 2D1.1(b)(11).

Petitioner's guideline range was calculated to be 151-188 months and the safety valve provision was inconsequential as his range was not limited by the five-year statutory minimum of 21 U.S.C. § 841(b)(1)(B). To the extent Petitioner argues he should have been entitled to the two-

11

level reduction under § 2D1.1(b)(11), he has not satisfied the requirement of providing truthful information. A defendant, as the party seeking the safety valve reduction, bears the burden of proving he is entitled to the downward departure by a preponderance of the evidence. *United States v. Bolka*, 355 F.3d 909, 912 (6th Cir. 2004). In a case such as this where Petitioner failed to provide the government "with a completely forthright account of his own involvement, much less complete information concerning other offenses that were part of the same course of conduct," the benefit of the safety valve should not apply. *United States v. Adu*, 82 F.3d 119, 124-25 (6th Cir. 1996) *accord United States v. Salgado*, 250 F.3d 438, 459-60 (6th Cir. 2001).

Petitioner has not pointed to any evidence to establish he was entitled to the benefit of the safety-valve provision and this claim is also without merit.

### D. Schedule II Substance

Petitioner argues he was unconstitutionally sentenced based on a finding the controlled substance involved was a Schedule II substance when in fact, noninjectable methamphetamine is a Schedule III controlled substance. This argument has been raised and rejected by the Sixth Circuit. *See United States v. Schrock*, 855 F.2d 327 (6th Cir. 1988); *United States v. Pinkley*, 24 F. App'x 287 (6th Cir. 2001). As the Sixth Circuit explained in *Schrock*, noninjectable methamphetamine was redesignated as a Schedule II controlled substance by the Attorney General in 1974. *Schrock*, 855 F.2d at 331-32; *see also* 21 C.F.R. § 1308.12(d)(2).

Accordingly, Petitioner's claim has no legal merit and fails to warrant relief.

### E. Ineffective Assistance of Counsel

Lastly, Petitioner claims his failure to raise the previous claims on appeal was due to his ineffective assistance of counsel. He argues his counsel was constitutionally ineffective because he

12

failed to argue: (1) methamphetamine was a Schedule III controlled substance, (2) Petitioner was entitled to the benefit of safety valve, (3) Bailes's testimony should have been excluded because of the improper benefit received from the Government (Court File No. 84, p. 12).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally

13

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

Petitioner fails to establish either prong of the *Strickland* test. As discussed above, none of the omitted claims had legal merit. An attorney's failure to raise meritless claims is reasonable in light of prevailing professional norms and does not demonstrate ineffective assistance of counsel. Furthermore, even if Petitioner's counsel had decided to pursue these frivolous claims they would have been denied and would not have affected the outcome of the Petitioner's proceedings.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Petitioner's sentencing was not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 84).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be

taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or that reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**